UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**KEITH JASON MAXWELL,**            )
                                    )
      **Plaintiff,**        )    Civil Action No.
                                    )    18-11885-FDS
      v.                    )
                                    )
**MTGLQ INVESTORS, L.P.,**          )
                                    )
      **Defendant.**        )
_____)

**MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS**

This is an action arising from a mortgage foreclosure. Jurisdiction is based on diversity of citizenship.

In January 2018, defendant MTGLQ Investors, L.P. foreclosed on a residential property owned by plaintiff Keith Maxwell. Maxwell seeks to void the foreclosure sale. MTGLQ moved to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion to dismiss will be granted.

**I. Background**

    **A. Factual Background**

Unless otherwise noted, the facts are stated as alleged in the complaint.[1]

On June 23, 2003, Keith Maxwell purchased a residential property in Sandwich,

---

[1] The Court will also consider the copies of various assignments and other publicly available documents submitted by MTGLQ, as these documents were referred to in the complaint and their authenticity is not disputed. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Although Maxwell objects to MTGLQ's reliance on public records of Washington Mutual's FDIC receivership, as discussed below, that dispute has to do with the chain of recorded assignments, and not with the authenticity of the receivership documentation, which Maxwell does not seem to dispute.

Massachusetts. (Compl. at 2 ¶¶ 1, 3). To finance to purchase, he obtained a mortgage loan from Arrow Mortgage Corporation, secured by the Sandwich property, in the amount of $266,000. (Compl. at 2 ¶ 3; Def. Mem. Ex. 1).[2] Arrow concurrently assigned the mortgage to Washington Mutual Bank, FA. (*Id.* Ex. 2).

On September 25, 2008, the United States Office of Thrift Supervision ("OTS") closed Washington Mutual and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. (*Id.* Ex. 3). The FDIC then sold certain Washington Mutual assets, including its interest in the Maxwell loan, to JPMorgan Chase Bank, N.A. (*Id.* Ex. 4).

On December 22, 2015, JPMorgan executed a limited power of attorney ("POA") appointing MTGLQ Investors, L.P. as its attorney-in-fact. (Compl. at 5-6 ¶¶ 9-11; Def. Mem. Ex. 5). The limited POA was notarized and then recorded at the Barnstable County Registry of Deeds. (Compl. at 5 ¶ 11; Def. Mem. Ex. 5). Pursuant to the limited POA, MTGLQ was given the power to "execute, acknowledge, seal and deliver assignments . . . [of] mortgage[s]." (Def. Mem. Ex. 5 at ¶ 1). However, the limited POA expressly disclaimed MTGLQ's authority to "foreclose delinquent Mortgage Loans or otherwise enforce rights under such Mortgages and the related Mortgage Note in [JPMorgan]'s name." (*Id.*).

On January 22, 2016, MTGLQ, acting pursuant to the limited POA, assigned the Maxwell loan to itself. (Compl. at 4 ¶ 6; Def. Mem. Ex. 6). The assignment was notarized and then recorded in the Barnstable County Registry of Deeds. (Compl. at 4 ¶ 6, 5 ¶ 11; Def. Mem. Exs. 5-6).

In April 2016, The Goldman Sachs Group, Inc. entered into a settlement agreement with the United States Department of Justice ("DOJ"), among others. (Def. Mem. Ex. 8). The

---

[2] The mortgage was recorded at the Barnstable County Registry of Deeds. (Compl. at 2 ¶ 3).

2

settlement followed a DOJ investigation into "the marketing, structuring, arrangement, underwriting, issuance, and sale of residential mortgage-backed securities ('RMBS') by Goldman Sachs." (*Id.* at ¶ A). In exchange for settling the various legal claims against it, Goldman Sachs, agreed to, among other things, provide $1.8 billion in "consumer relief to remediate harms resulting from [its] alleged unlawful conduct." (*Id.* at ¶ 2).

The bulk of the settlement, $1.52 billion, was to be made available as set forth in annex 2 to the agreement. (*Id.*). According to the complaint, the $1.52 billion "will be paid out pursuant to an agreement with the United States that Goldman will provide loan modifications, including loan forgiveness and forbearance, to distressed and underwater homeowners throughout the country, as well as financing for affordable rental and for-sale housing throughout the country." (Compl. at 3 n.1). The agreement further provided that it was "intended for the benefit of the Parties only and [did] not create any third-party rights." (Def. Mem. Ex. 8 at ¶ 16).

The complaint alleges:

> On information and belief, reportedly, MTGLQ Investors, L.P. is a wholly owned subsidiary of 'Goldman Sachs', that has been purchasing delinquent home loans from Fanny Mae, and 'Goldman Sachs' itself began utilizing MTGLQ Investors so that it may comply with a 04/11/16 settlement with the Federal Government arising from essentially unethical loan practices under the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA).

(Compl. at 3 ¶ 4).

At some point, Maxwell fell behind on his mortgage payments. (*Id.* at 5 ¶ 10). On January 25 or 28, 2018, MTGLQ foreclosed on the property. (*Id.*; Def. Mem. Ex. 7 at 1).[3] The foreclosure deed stated, among other things, that MTGLQ was "the present holder of

---

[3] There is also evidence that the property was sold at a public auction on December 6, 2017, several weeks before the foreclosure deed was executed. (*Compare* Def. Mem. Ex. 7 at 1, 3 *with id.* at 2). The discrepancy in dates does not appear to be material to the allegations in the complaint.

[Maxwell's] mortgage," pursuant to the assignment recorded in the Barnstable County Registry of Deeds. (Compl. at 4 ¶ 6, 5 ¶ 10; Def. Mem. Ex. 7 at 1). It was accompanied by an "Affidavit of Sale Under Power of Sale in Mortgage," which attested that MTGLQ had complied with all publication and notice requirements prior to the foreclosure sale, including those required by Mass. Gen. Laws ch. 244, § 14. (Def. Mem. Ex. 7 at 2-3).[4]

It appears that Maxwell continues to reside on the property, without paying the mortgage or any rent. His occupation is the subject of a summary-process action in the state housing court. (Compl. at 5 ¶ 10). The parties have represented that the summary-process matter has since been stayed pending the outcome of this case.

**B.    Procedural History**

On July 31, 2018, Maxwell filed a complaint against MTGLQ in Barnstable County Superior Court seeking injunctive relief and a declaratory judgment pursuant to Mass. Gen. Laws ch. 231A, § 1. The complaint alleges that the foreclosure was unlawful on multiple grounds.[5] First, it challenges MTGLQ's right to foreclose under an assignment. Next, it contends MTGLQ was required to offer Maxwell a loan modification pursuant to the 2016 DOJ settlement, but failed to do so. Finally, it alleges that MTGLQ failed to provide pre-foreclosure notices to Maxwell as required by Mass. Gen. Laws ch. 244.

On September 1, 2018, MTGLQ removed the action to this Court.

MTGLQ has moved to dismiss the complaint for failure to state a claim upon which relief

---

[4] Both the foreclosure deed and the accompanying affidavit were executed by New Penn Financial, LLC, doing business as Shellpoint Mortgaging Servicing. New Penn Financial was authorized to act as MTGLQ's attorney-in-fact pursuant to a power of attorney recorded in the Worcester County Registry of Deeds. (Def. Mem. Ex. 7). The deed and the accompanying affidavit were both notarized and then recorded at the Barnstable County Registry of Deeds. (*Id.*).

[5] Because Maxwell does not number his claims, the Court will instead refer to them as follows: the "defective-assignment claims" (Compl. at 6-7 ¶¶ 2-3); the "loan-modification claim" (*id.* at 8 ¶ 4); and the "notice claim" (*id.* at 8-9 ¶ 5).

4

can be granted, contending that Maxwell lacks standing to challenge the mortgage assignment, because any alleged procedural infirmities merely render the assignment voidable, not void. It further contends that his remaining claims, which concern loan modification and foreclosure notices, lack factual support sufficient to state a claim.

## II.     Legal Standard

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.    Analysis

The complaint alleges that the foreclosure was unlawful on six grounds. As to each ground, it seeks declaratory judgment that the identified defect renders the foreclosure "unlawful," and the foreclosure deed either "void" or "voidable." It further seeks a "[j]udgment

5

rendered for Mr. Maxwell and order issued reforming title back to [him]."[6]

MTGLQ has moved to dismiss the complaint, contending that Maxwell lacks standing to pursue some of his claims, and that the remaining claims lack sufficient factual support. For the following reasons, the motion to dismiss will be granted in part and denied in part.

### A. Defective-Assignment Claims

The first four claims allege that there is some defect in MTGLQ's right to foreclose under the assignment from JPMorgan, the effect of which is to render the foreclosure unlawful, and the foreclosure deed either void or voidable. The first claim concerns the absence of a record in the Barnstable County Registry of Deeds of the FDIC's receivership of Washington Mutual. In other words, this claim alleges there is a gap in the record of assignment between the original mortgagee and JPMorgan, the alleged predecessor-in-interest to MTGLQ. The second and third claims concern a lack of an affidavit—or an "attestation of fact under the pains and penalties of perjury"—to accompany the assignment and limited POA. Finally, the complaint alleges that MTGLQ held only a limited POA, which did not include the authority to foreclose, and which did not specifically refer to Maxwell's property. The complaint contends that each of these four alleged defects—two in the assignment itself and two in the underlying POA—renders the foreclosure "unlawful," and the foreclosure deed either "void" or "voidable."

Under Massachusetts law, mortgagors have "standing only to challenge a mortgage assignment as invalid, ineffective, or void" and not "to challenge shortcomings in an assignment that render it merely voidable at the election of one party." *Wilson v. HSBC Mortg. Services, Inc.*, 744 F.3d 1, 9 (1st Cir. 2014) (quoting *Culhane v. Aurora Loan Services of Nebraska*, 708

---

[6] The complaint also requests a stay of the summary-process action pending in the state housing court and "any and all other [equitable] relief to which he may be otherwise entitled to at law." It is highly doubtful that this Court has authority to stay a state-court proceeding. In any event, because the parties have represented that the summary process matter has since been stayed, that request for relief is now moot.

6

F.3d 282, 291 (1st Cir. 2013)). For that reason, a "trial court confronted with the standing issue in this type of case must conduct an inquiry to determine whether a plaintiff's allegations are that a mortgage assignment was void, or merely voidable." *Id.*

As an initial matter, Maxwell's claim that each defect renders the foreclosure deed "voidable" fails to state a claim, as he lacks standing to challenge voidable assignments. And even if the Court considers his argument in the alternative, that the defects render the foreclosure deed "void," those claims still fail.

Three of the alleged defects—the alleged unrecorded FDIC receivership, absence of accompanying affidavits, and the POA's failure to specifically reference Maxwell's property— are best understood as "mere[] . . . procedural infirmities." *See Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir. 2013) (citing *Culhane*, 708 F.3d at 291). Such "infirmities," if that is what they are, could only make the assignment voidable, rather than void; therefore, under Massachusetts law, Maxwell is without standing to challenge them. *See id.*[7]

Even if Maxwell had standing to challenge those defects, those claims still fail. A mortgage assignment, like any other contract, is void only when it is "of no effect whatsoever." *Wilson,* 744 F.3d at 10 (citing *Ball v. Gilbert*, 53 Mass. 397, 401-04 (1847)). To prove that a mortgage assignment is void, a claimant must show that the "putative assignor 'never properly held the mortgage and, thus, had no interest to assign.'" *Id.* (quoting *Culhane*, 708 F.3d at 291). Here, there are no plausible allegations that the assignors in question did not properly hold the mortgage, only that there were various defects in the process of recording these documents. Such allegations are not sufficient to state a claim that the relevant assignments were void from

---

[7] As to the claims surrounding the absence of affidavits, the Court notes that Mass. Gen. Laws ch. 183, § 54B requires mortgage assignments and powers of attorney be notarized in order to be binding, but does not require that they be supported by affidavit. Furthermore, Maxwell now seems to concede these claims, focusing instead on the absence of receivership record and the scope of MTGLQ's POA. (*See* Pl. Mem. at 8-9).

7

the beginning.

The fourth alleged defect is that MTGLQ exceeded the scope of the limited POA. Even if Maxwell has standing to assert such a claim, that claim also fails. It is true that the limited POA expressly disclaimed MTGLQ's authority to "foreclose delinquent Mortgage Loans or otherwise enforce rights under such Mortgages and the related Mortgage Note in [JPMorgan]'s name." (Def. Mem. Ex. 5 at ¶ 1). However, it also gave MTGLQ the power to "execute, acknowledge, seal and deliver assignments . . . [of] mortgage[s]." (*Id.*). MTGLQ exercised that power on January 22, 2016, when it assigned itself the loan. Because MTGLQ foreclosed on Maxwell's property as the mortgagee, not the attorney-in-fact of a mortgagee, it did not exceed its authority under the POA.

Maxwell now contends that the assignment to MTGLQ and subsequent foreclosure (even if not literally outside the authority granted under the POA) amount to "[taking] the property essentially through self dealing," thereby creating a factual question as to MTGLQ's right to foreclose. (Pl. Mem. at 9). Because Maxwell cites no statute or other legal authority to support that bare allegation, the complaint fails to state a plausible claim in that respect.

The motion to dismiss will therefore be granted as to the defective-assignment claims.

### B. <u>Loan-Modification Claim</u>

The complaint next contends that MTGLQ did not offer Maxwell a loan modification prior to foreclosing, despite being obligated to do so under the 2016 settlement agreement between Goldman Sachs and the DOJ.

"Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults." *Mackenzie v. Flagstar Bank, FSB*, 738 F.3d 486, 493 (1st Cir. 2013) (quoting *Peterson v. GMAC Mortg., LLC*,

2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011)). Maxwell concedes that the mortgage contract did not create such a duty. (Pl. Mem. at 6). And he points to no other source of contractual or legal obligation to modify the mortgage, other than the DOJ settlement. Therefore, unless the DOJ settlement created a right to be offered a loan modification that is enforceable by Maxwell, MTGLQ was under no duty to offer him a modification prior to foreclosing.

Maxwell contends he was a third-party beneficiary of the DOJ settlement. The complaint relies on paragraph 2 and annex 2 of the settlement agreement, which outline the $1.52 billion in consumer relief that Goldman Sachs agreed to provide "to remediate harms resulting from [its] alleged unlawful conduct."[8] It further relies on the following "eligibility" section from the "consumer relief" annex of the agreement:

> The Consumer Relief eligibility criteria shall reflect only the terms set forth below and the following principles and conditions: (1) Consumer Relief will not be implemented through any policy that violates the Fair Housing Act or the Equal Credit Opportunity Act; (2) Consumer Relief will not be conditioned on a waiver or release by a borrower, provided that waivers and releases shall be permitted in the case of a contested claim where the borrower would not otherwise have received as favorable terms or consideration; and (3) Eligible modifications may be made under the Making Home Affordable Program (including the Home Affordable Modification Program and the Housing Finance Agency Hardest Hit Fund) and any proprietary or other modification program. Nothing herein shall preclude the implementation of pilot programs in particular geographic areas that do not violate the Fair Housing Act, the Equal Opportunity Credit Act, or any other federal or state civil rights law.

(Compl. at 3 n.2, quoting annex 2).[9]

The complaint does not explain how (1) the fact that Goldman Sachs agreed to fund a

---

[8] Because Maxwell refers to the DOJ settlement agreement extensively in his complaint, the Court may properly rely on that agreement.

[9] The complaint mistakenly identifies the eligibility criteria for consumer relief as being found in annex 1. Annex 1, however, is a statement of facts. The language he quotes, which sets forth the terms, principles, and conditions to be reflected in the eligibility criteria, is from annex 2.

9

modification program for some group of borrowers, meeting certain eligibility criteria, means (2) that Maxwell is entitled to relief under the program. To begin, Goldman Sachs is not even a defendant. The complaint simply alleges that MTGLQ is obligated to provide Maxwell relief because it is a "wholly owned subsidiary" of Goldman Sachs. (Compl. at 3 ¶ 4). If there is a reason why the subsidiary should be responsible for the obligation of the parent, the complaint does not identify it.

Furthermore, the complaint does not identify how Maxwell is even eligible for any of the modification programs, or how he satisfies the "eligibility criteria" in question.[10] Nor does the complaint suggest any reason why Maxwell, in particular, had a right to a loan modification under the agreement, even assuming that he met the relevant criteria. The complaint does not allege, for example, that the agreement obligates Goldman Sachs to give loan modifications to *all* borrowers who meet the relevant criteria, or even those meet the criteria and whose loans are held by MTGLQ. There is simply nothing in the complaint to suggest that Goldman Sachs had an obligation to offer a modification to Maxwell, as opposed to some other borrower or group of borrowers.[11]

Finally, and in any event, the agreement expressly states that it "is intended for the benefit of the Parties only and does not create any third-party rights." (Def. Mem. Ex. 8 at ¶ 16). *See also MacKenzie*, 738 F.3d at 491 ("[B]orrowers are not third-party beneficiaries of agreements between mortgage lenders and the government."). Yet the complaint specifically

---

[10] Notably, the complaint does not allege that Maxwell was the victim of predatory loan practices or that the loan had an unduly high interest rate, loan-to-value ratio, or other feature that may have been unscrupulous or unfair. Nor does it allege that he was defrauded by MTGLQ or Goldman Sachs, neither of which was his initial lender.

[11] Suppose, for example, Goldman Sachs provided $100,000 in mortgage relief to each of 15,000 borrowers (totaling $1.5 billion). What reason is there to believe that Maxwell would be one of the 15,000 borrowers who received relief, as opposed to the millions of borrowers who did not? If there is such a reason, the complaint does not identify it.

alleges that Maxwell was a third-party beneficiary of the agreement. If for no other reason, that contractual provision alone is sufficient to bar his claim.

Accordingly, to the extent the complaint alleges that MTGLQ had an obligation to offer Maxwell a loan modification, it fails to state a claim upon which relief can be granted.

**C.     Notice Claim**

Finally, the complaint alleges that MTGLQ "did not give the pre-foreclosure notices required by [Mass. Gen. Laws ch.] 244, and/or any of the Commonwealth of Massachusetts Attorney General's regulations." It does not say which notices were not provided, nor does it specify the regulations or sections of Chapter 244 that allegedly required them.

MTGLQ contends that this conclusory allegation lacks factual support. Maxwell counters as follows:

> [A]ny foreclosing entity is well aware of the notice requirements under G.L.c.214, which outlines in detail the preforeclosure notice requirements, mailings, newspaper and auction requirements, and post foreclosure requirements regarding the foreclosure deed. Further, all conveyancers in Massachusetts must be familiar with the relevant Code of Mass. Regulations, 209 CMR 56:00 - 56.04, which requires mortgagees to send a 90 and/or 150 day notice of rights to cure. Given the narrow scope of the law, the Defendant's arguments that this branch of Mr. Maxwell's claim is subject to dismissal for lack of specificity fails.

(Pl. Mem. at 7).

The Court is not persuaded. Putting the regulations aside, Chapter 244 has more than 40 separate sections, many of which deal with pre-foreclosure notice requirements. Section 14, for example, requires a mortgagee, among other things, to publish notice of foreclosure in a newspaper in advance of a foreclosure sale. Mass. Gen. Laws ch. 244, § 14.[12] Section 35A

---

[12] There is certainly evidence in the record indicating that the bank complied with the statutory notice requirements. Exhibit 7 is a copy of a notarized and recorded affidavit, executed on January 25, 2018, by a representative of MTGLQ's mortgage servicer. (Def. Mem. Ex. 7 at 2-3). The affidavit states that MTGLQ "complied with Chapter 244, Section 14 of the Massachusetts General Laws, as amended, by causing to be mailed the required notices, certified mail, return receipt requested." Although MTGLQ does not argue otherwise, the

11

provides that mortgagors are entitled to an opportunity to cure a mortgage default, and requires that they receive a notice to that effect prior to acceleration or foreclosure. *Id.* § 35A(a)-(c). And, under Section 35B, a "creditor shall not cause publication of notice of a foreclosure sale" upon "certain [defined] mortgage loans" unless "it has first taken reasonable steps and made a good faith effort to avoid foreclosure," including "send[ing] notice . . . of the borrower's rights to pursue a modified mortgage loan." *Id.* § 35B(b)-(c).

Under the circumstances, the allegations in the complaint are insufficient to put MTGLQ on fair notice of the claim against it. Rule 8 requires that a complaint include "a short and plain statement of the grounds for the court's jurisdiction"; "a short and plain statement of the claim showing that the pleader is entitled to relief"; and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2). At a minimum, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006) (quotations omitted). By failing to specify which pre-foreclosure notice or notices MTGLQ failed to provide him, or which statutory section or regulation required them, the complaint fails to give MTGLQ fair notice of the grounds of his claim.

Accordingly, the notice claim will be dismissed.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim is

---

Court observes that while that sworn statement is not conclusive evidence of MTGLQ's compliance with section 14's pre-foreclosure notice requirements, much less its compliance with all pre-foreclosure notice requirements, it is nonetheless evidence. *See Buba v. Deutsche Bank National Trust Co. Americas*, 2016 WL 2626861, at *2 n.1 (D. Mass. May 6, 2016) (affidavit protects third-party purchasers, not the bank itself).

GRANTED.

**So Ordered.**

Dated: February 4, 2019

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge